# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHIEFTAIN ROYALTY COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 16-CV-444-JHP ) |
| BP AMERICA PRODUCTION COMPANY, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court are Defendant's Motion to Dismiss (Doc. No. 32), Plaintiff's Response (Doc. No. 37), and Defendant's Reply (Doc. No. 38). Plaintiff has also filed a Notice of Supplemental Authority (Doc. No. 45), to which Defendant filed a Response and Objection (Doc. No. 47). After consideration of the briefs, and for the reasons stated below, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff Chieftain Royalty Company ("Plaintiff" or "Chieftain") filed its "Original Class Action Complaint" ("Complaint") on October 14, 2016, for itself and all others similarly situated, against Defendant BP America Production Company ("Defendant" or "BP"). Plaintiff alleges that BP breached its express duties under oil and gas leases to pay royalties to Plaintiff and the putative class on

"Fuel Gas"—natural gas produced from the wells but used off the lease premises as fuel to power the gathering system components—from wells in Oklahoma in which the class owns mineral interests. (Doc. No. 2 (Complaint), ¶¶ 1-2). Plaintiff alleges BP knowingly and systematically underpaid royalties to Plaintiff and the putative class members through a policy of paying no royalty for Fuel Gas, which BP implemented by failing to disclose to Plaintiff and other putative class members on their monthly royalty checkstubs that BP was not paying royalty on Fuel Gas. (*Id.* ¶¶ 4-5, 21). Plaintiff seeks to recover the royalty BP owes it and the putative class for its breach of express covenants to pay royalties on Fuel Gas. (*Id.* ¶ 6). In this case, Plaintiff brings claims against BP for breach of contract, tortious breach of contract, unjust enrichment, fraud (actual and constructive) and deceit, accounting, and injunction.

BP has now moved to dismiss the class action allegations of the Complaint pursuant to Federal Rules of Civil Procedure 23(d)(1)(D), 12(b)(1), 12(b)(6), and 56. (Doc. No. 32). BP additionally moves to dismiss the Complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), 10(a), and 12(b)(6). (*Id.*). Plaintiff filed a Response in opposition (Doc. No. 37), and BP filed a Reply (Doc. No. 38). Plaintiff thereafter filed a Notice of Supplemental Authority (Doc. No. 45), to which BP filed a Response and Objection (Doc. No. 47). The pending motion is fully briefed and ripe for review.

# DISCUSSION

## I. Standard of Review

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true, and must construe them in the light most favorable to the plaintiff. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly,* 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

> [T]he *Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do. In other words, Rule 8(a)(2) still lives. Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012)).

## II. Class Action Allegations

Chieftain filed this action on its own behalf and on behalf of a class pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to certify a class defined as:

> All non-excluded persons or entities who are or were royalty owners in Oklahoma wells where BP, including its predecessors or affiliates, is or was the well operator and working interest owner (or, as a nonoperating working interest owner, BP separately marketed gas), and who are or were entitled to share in royalty proceeds payable under oil and gas leases that contain an express provision stating that royalty will be paid on gas used off the lease premises and/or in the manufacture of products.

(Doc. No. 2, ¶ 13). BP argues that Chieftain's class claims should be dismissed on the ground of issue preclusion. BP contends that other plaintiffs, not named in this case, have previously attempted without success to certify a similar class in various Oklahoma courts: *Watts v. Amoco Prod. Co.*, No. C-2001-73 (Okla. Dist. Ct. Pittsburg Cty.); *Rees v. BP Am. Prod. Co.*, No. CJ-2003-795 (Okla. Dist. Ct. LeFlore Cty.); and *Consul Props., LLC v. Unit Petroleum Co.*, No. 15-cv-840-R (W.D. Okla.) (the "Implied Covenant Cases"). Specifically, BP argues *Watts*, in which class certification was denied in 2002, should be given preclusive effect to bar Chieftain's class claims in this case. BP points out that *Rees* gave preclusive effect to *Watts* to bar the plaintiff's claims in that case, and the district court in *Consul* recently applied issue preclusion to bar similar class claims pursuant to

4

*Watts* and *Rees*.[1]  Therefore, this Court should preclude Plaintiff here from attempting to take yet another "bite at the apple." (Doc. No. 32, at 3).

In response, Plaintiff argues *Watts* cannot bar Chieftain's claims here, because *Watts* involved a breach of the implied covenant to market by deducting post-production costs from royalties, without regard to the express covenants in the leases. In this case, by contrast, Plaintiff alleges BP breached an *express* covenant in the class leases, which expressly requires BP to pay royalties on Fuel Gas. Therefore, Plaintiff argues the issue raised in this case was neither raised nor litigated in *Watts* or any of the other Implied Covenant Cases.

The Court agrees with Plaintiff. The Implied Covenant Cases cannot bar Plaintiff's class claims here, because *Watts* and *Rees* pertain exclusively to issues of the "implied covenant to market." In *Watts*, the trial court found the "central issue" was the same issue presented in *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203 (Okla. 1998)—"whether the deduction of gathering, compression and other costs incurred off the leased premises breached a 'gross proceeds' royalty provision." *Watts*, Order Denying Plaintiff's Motion to Certify Class Action, at 9-10 (Dec. 10, 2002) (Doc. No. 32-2). The trial court in *Watts* denied class certification, concluding that *Mittelstaedt* "requires an 'individual' examination of

---

[1] In its motion, BP also refers to another putative royalty class action against BP: *Cecil v. BP America Production Company*, No. 16-cv-410 (E.D. Okla.). However, Judge White in *Cecil* recently ruled against BP on the matter of issue preclusion. See Doc. No. 48 in Case No. 16-cv-410. Therefore, *Cecil* does not support BP's argument in favor of issue preclusion.

the marketability of gas, the reasonableness of the post-production costs, and whether revenues from sales transactions increased in proportion to the costs that were incurred." *Id.* at 10 (citing *Mittelstaedt*, 954 P.2d at 1205). In an unpublished opinion, the Court of Civil Appeals affirmed the lower court's decision on the same grounds. *Watts v. Amoco Prod. Co.*, Case No. 98,782 (Okla. Civ. App. Sept. 14, 2004) (Doc. No. 32-4).

In *Rees*, the plaintiffs alleged "BP underpaid royalties by wrongfully charging marketing fees and costs of making the gas marketable, including costs for gathering, treatment, compression, and dehydration, to royalty owners." *Rees v. BP Amer. Prod. Co.*, 211 P.3d 910, 910 (Okla. Civ. App. 2008). The trial court found the *Rees* plaintiffs were "seeking th[e] same relief and [were] asserting essentially the same allegations to justify this requested relief" as the plaintiffs in *Watts*. *Rees*, Order, at 2 (Aug. 2, 2007) (Doc. No. 32-5). Accordingly, the trial court granted BP's motion to dismiss the plaintiff's class claims based on issue preclusion. *Id.* at 4. The Court of Civil Appeals affirmed, finding that Rees was an unnamed member of the proposed class in *Watts*, and therefore the *Rees* plaintiffs were bound by *Watts*. *Rees v. BP Amer. Prod. Co.*, 211 P.3d 910, 912 (Okla. Civ. App. 2008). The Oklahoma Supreme Court initially granted certiorari but then withdrew the grant and denied certiorari the following year. (*See* Doc. No. 32-7 (Orders granting and denying certiorari)).

More recently, the Western District of Oklahoma in *Consul* dismissed the class action allegations in another implied covenant case, holding that those plaintiffs were bound by a prior denial of class certification in a nearly identical case, pursuant to the principles of *Watts* and *Rees*. *Consul Props. v. Unit Pet. Co.*, Order (Feb. 2, 2016) (Doc. No. 32-1). In *Consul*, the plaintiffs alleged the lessee breached the express and implied duty to market because it "improperly charged or deducted . . . certain costs necessarily incurred to transform the raw natural gas from the Subject Wells into a marketable product." *Consul*, Second Amended Complaint, ¶¶ 9-14 (Doc. No. 37-5).

Here, Plaintiff's proposed class consists of interest owners with leases containing an express obligation to pay royalties on Fuel Gas. Plaintiff does not allege BP deducted post-production costs incurred to transform gas into a marketable product, which would implicate the *Mittelstaedt* rule and would be similar to the claims made in *Watts* and *Rees*. Plaintiff here alleges BP breached an express Fuel Gas clause by using or allowing third parties to use Fuel Gas off the leased premises to power machinery and equipment, an issue that was never litigated in *Watts*. (Doc. No. 2, ¶¶ 2, 23-26). It is well-established that Oklahoma courts distinguish between breaches of express and implied covenants. *See Walden v. Potts*, 152 P.2d 923, 924 (Okla. 1944); *Cent. States Prod. Corp. v.*

*Jordan*, 86 P.2d 790, 791 (Okla. 1939) ("It is a general rule in [Oklahoma] that express covenants control over implied covenants.").

In short, it appears that *Watts* and *Rees* cannot preclude the class claims in this case, because *Watts* did not address the express covenant at issue here. Indeed, *Watts* did not even mention Fuel Gas. Therefore, the Court rejects BP's argument that this case is similar to the Implied Covenant Cases and the class claims should be similarly dismissed pursuant to *Watts* and *Rees*.

### III. Breach of Contract (Count I)

BP argues Plaintiff fails to state a claim for breach of contract (Count I), because Plaintiff did not describe with specificity the leases' terms or attach copies of the leases at issue to the Complaint.

BP's argument lacks merit. Plaintiff included specific allegations about the express lease terms pertaining to Fuel Gas: "Specifically, each of the oil and gas leases requires, through the same or substantially similar language, that BP pay royalty to the lessors for gas 'used by the lessee off the leased premises or . . . for the manufacture of casinghead gasoline or other products . . . .'" (Doc. No. 2, ¶ 23). These allegations sufficiently identify the relevant lease terms such that BP has adequate notice of Plaintiff's breach of contract claim. Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim," to "'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'" *Khalik*, 671 F.3d at 1192 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Plaintiff's allegations regarding the Fuel Gas clause satisfy this standard for purposes of the breach of contract claim.

Moreover, Plaintiff is not required to attach the actual lease to the Complaint. As the court noted in *Harris v. Chevron U.S.A., Inc.*, 2015 WL 3746989, at *2 (W.D. Okla. June 15, 2015):

> While at some point the Court will be required to examine the leases to determine precisely the rights of the parties, the allegations in Plaintiff's Amended Complaint set out with required specificity the manner in which she believes Defendants are breaching the terms of the lease. The Court simply finds no requirement in the law that she attach a copy of a document in the possession of Defendants to permit her claim to survive a Motion to Dismiss.

Accordingly, BP's request to dismiss Plaintiff's breach of contract claim is denied.

## IV. Tortious Breach of Contract (Count II)

Next, BP contends Plaintiff's claim for tortious breach of contract should be dismissed, because the Complaint provides no facts to support the existence of a "special relationship" that could give rise to such a claim. BP argues the existence of an oil and gas lessor-lessee relationship itself does not create the requisite special relationship that could support a claim for tortious breach of contract. In response, Plaintiff argues that Oklahoma courts have never been reluctant to allow tortious breach of contract claims in contract disputes between lessors and oil and

9

gas companies, citing to Oklahoma cases in which tortious breach of contract claims were permitted to proceed when the contract dispute occurred in the oil and gas context. *See, e.g., Hall Jones Oil Corp. v. Claro*, 459 P.2d 858, 861-62 (Okla. 1969); *Woods Pet. Corp. v. Delhi Gas Pipeline Corp.*, 700 P.2d 1023, 1027 (Okla. Civ. App. 1983).

The Court agrees with BP that Plaintiff's tortious breach of contract claim should be dismissed. Oklahoma courts recognize tortious breach of contract only in limited circumstances, such as in the insurance context. *See Embry v. Innovative Aftermarket Sys., L.P.*, 247 P.3d 1158, 1160 (Okla. 2010) ("This Court has indeed expressed reluctance to extend tort recovery for bad faith beyond the insurance field.") (citing *First Nat'l Bank and Trust of Vinita v. Kissee*, 859 P.2d 502, 509 (Okla. 1993)). In *Embry*, the Oklahoma Supreme Court found that beyond the insurance context, tort liability for bad faith requires the existence of a "special relationship." *Id.* The Oklahoma Supreme Court in *Embry* explained this "special relationship" "is marked by (1) a disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract, and (2) the elimination of risk." *Id.* (citing *Kissee*, 859 P.2d at 509).

Under this standard, Plaintiff has not met the requisites for pleading a tortious breach of contract claim. Courts have been hesitant to expand the "special relationship" to include oil and gas leases. *See, e.g., Reirdon v. Cimarex Energy*
10

*Co.*, 2017 WL 4295188, at *2 (E.D. Okla. Sept. 27, 2017) (dismissing tortious breach of contract claim pertaining to oil and gas lease and collecting cases). Although Plaintiff alleges a "special relationship" exists generally between an oil and gas lessor and lessee under Oklahoma law (Doc. No. 2, ¶ 42), Plaintiff's allegation is purely conclusory and therefore inadequate to state a claim for tortious breach of contract.

The Court declines Plaintiff's invitation to disregard the line of cases treating tortious breach of contract claims in oil and gas cases differently than insurance-like bad faith claims. Accordingly, Plaintiff's claim for tortious breach of contract is dismissed without prejudice.

## V. Unjust Enrichment (Count III)

BP asserts Plaintiff's unjust enrichment claim fails, because Plaintiff has an adequate remedy at law for BP's alleged breach of the leases. However, as Plaintiff points out, Rule 8 explicitly permits Plaintiff to (1) "set out 2 or more statements of a claim or defense alternatively or hypothetically"; and (2) "state as many separate claims or defenses it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2)-(3). Further, Oklahoma law allows a plaintiff to plead alternative claims for relief, provided that there is no double recovery for the same injury. *See Murrah v. EOG Res., Inc.*, 2011 WL 227652, at *3 (W.D. Okla. Jan. 21, 2011); *N.C. Corff P'ship, Ltd. V. Oxy USA, Inc.*, 929 P.2d 288, 295 (Okla. Civ. App.

1996); *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1030 (10th Cir. 2007); *Reirdon v. Cimarex Energy Corp.*, 2017 WL 4295188, at *3 (E.D. Okla. Sept. 27, 2017); *Harris v. Chevron*, 2015 WL 3746989, 2015 U.S. Dist. LEXIS 76882, *4 (W.D. Okla. June 15, 2015).

In its Reply, BP does not dispute that Plaintiff may plead alternative claims for relief but submits that the "better reasoned approach" is to reject Plaintiff's argument and to require Plaintiff to stand on its breach of contract claim. The Court disagrees with BP. Rule 8 permits Plaintiff's alternative pleading approach. Therefore, dismissal of the unjust enrichment claim at this stage is unwarranted.

**VI. Fraud (Actual and Constructive) and Deceit (Count IV)**

Next, BP contends Plaintiff's claim for fraud (actual and constructive) and deceit must be dismissed for three reasons. The Court rejects BP's arguments and finds this claim to be adequately pleaded.

First, BP argues the Complaint does not allege facts to show plausibly that Plaintiff relied on the allegedly erroneous royalty check stubs. A fraud claim must satisfy Fed. R. Civ. P. 9(b), which requires the circumstances constituting fraud must be alleged "with particularity," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In the Tenth Circuit, a complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the

12

consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

Here, the Complaint alleges the contents and circumstances of the allegedly false representations. Plaintiff alleges the monthly royalty check stubs Plaintiff and the putative class received from BP "falsely report[ed] the gross volume and price of the gas sold." (Doc. No. 2, ¶ 28; *see id.* ¶¶ 5, 29, 48-52). Plaintiff further alleges that Plaintiff and the putative class relied upon BP's misrepresentations and omissions to their detriment, in that they were systematically underpaid royalties as a result of BP's willful misrepresentations "[i]n direct violation of BP's express obligations under the oil and gas leases." (*Id.* ¶ 4; *see id.* ¶¶ 5, 21, 28-29, 48-52). Oklahoma law is clear that reliance may be inferred. *Varn v. Maloney*, 516 P.2d 1328, 1332 (Okla. 1973). *See Foster v. Merit Energy Co.*, 2010 WL 9039558, at *1 (W.D. Okla. Oct. 22, 2010). These allegations of the circumstances of fraud are sufficiently particular to satisfy Rule 9(b).

Second, BP argues the fraud claim fails because Plaintiff does not allege it requested additional information from BP. However, Plaintiff alleges BP violated its royalty reporting requirements of the Oklahoma Production Revenue Standards Act ("PRSA") "by knowingly and intentionally failing to report to Chieftain and the putative Class the full and correct volume, price and gross value of the gas

13

before deductions for Fuel Gas." (Doc. No. 2, ¶ 29). The PRSA expressly requires a producer to disclose with each royalty payment to an interest owner, without request, "the Owner's share of the total value of sales attributed to such payment prior to any deductions." Okla. Stat. tit. 52, § 570.12(A)(8). *See Howell v. Texaco*, 112 P.3d 1154, 1161 (Okla. 2004) (the PRSA "provides a legal duty on which the plaintiffs can base a claim for constructive fraud."). Therefore, Plaintiff's claim for fraud is not subject to dismissal simply because Plaintiff failed to allege the royalty owner requested information from BP.

Third, BP contends the fraud claim should be dismissed, because the alleged harm in the fraud claim is identical to that resulting from Plaintiff's breach of contract claim. However, contrary to BP's argument, Plaintiff does not allege that its fraud claim is based in BP's concealment of its intention to breach the contract. (*See* Doc. No. 32, at 17). Rather, Plaintiff alleges BP violated its duty under PRSA to "accurately inform the plaintiffs of the facts on which the royalty payments are based." *Howell*, 112 P.3d at 1161. (*See* Doc. No. 2, ¶ 29). A violation of PRSA's reporting requirements may form the basis for a constructive fraud claim. *Id.* Therefore, BP's request to dismiss the fraud claim for this reason is denied.

## VII. Accounting (Count V)

BP argues Plaintiff's request for accounting should be dismissed. BP contends Plaintiff has no cognizable legal right to an accounting, and an equitable

14

accounting is not a legal claim, but a remedy dependent on a resolution of other claims.

To the extent Plaintiff pleads a separate legal claim for an accounting, Plaintiff adequately pleads this claim. (Doc. No. 2, ¶¶ 53-54). BP's cited authority does not support dismissal of an accounting claim such as Plaintiff's at the pleading stage.

To the extent Plaintiff seeks equitable relief, the Court concludes Plaintiff's separate identification of this request as a claim for relief does not warrant dismissal at this stage. The form that relief takes, after the merits of other claims are determined, will be ascertained later in this case. *See Reirdon v. Cimarex Energy Co.*, 2016 WL 4991552, at *3 (E.D. Okla. Sept. 16, 2016) (denying request to dismiss claims for equitable relief of accounting, disgorgement, and injunctive relief, concluding "[i]t is certainly premature to ascertain whether the basis for equitable relief is meritorious."). Plaintiff has sufficiently pleaded the request for equitable relief. (Doc. No. 2, ¶¶ 53-54). At this stage, BP is not entitled to dismissal of equitable remedies simply because Plaintiff has also pleaded legal remedies.

## VIII. Injunction (Count VI)

BP argues Plaintiff's request for injunction should be dismissed, because Plaintiff has not proved BP engaged in or threatened to engage in abusive contacts

15

with unnamed putative class members. However, as explained above, Plaintiff's separate identification of the injunctive request as a claim for relief does not warrant dismissal at this stage. *See Reirdon*, 2016 WL 4991552, at *3. Plaintiff has sufficiently pleaded its request for injunctive relief. (Doc. No. 2, ¶¶ 55-59). As Plaintiff notes in its Reply, Plaintiff may move for an injunction at a later date, after factual development and submission of evidence.

## IX. Statute of Limitations

Finally, BP requests dismissal of Plaintiff's claims based on expiration of the statute of limitations. "[T]o dismiss a claim pursuant to Rule 12(b)(6) on this basis it must be clear from the face of the complaint that the claims are time-barred." *Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. App'x 463, 467 (10th Cir. 2009). *See Aldrich v. McCulloch*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Here, it is not clear from the face of the Complaint that Plaintiff's claims are time-barred. Further, Plaintiff has pleaded tolling, and facts in support thereof, which render dismissal on statute of limitations grounds inappropriate at this time. (*See* Doc. No. 2, ¶ 34).

As Plaintiff points out, Plaintiff's claims may be tolled by virtue of the doctrines of fraudulent concealment or equitable estoppel. In Oklahoma, fraudulent concealment "constitutes an implied exception to the statute of limitation, and a party who wrongfully conceals material facts, and thereby

16

prevents a discovery of his wrong, . . . is not allowed to take advantage of his own wrong by pleading the statute." *Loyal Protective Ins. Co. v. Shoemaker*, 63 P.2d 960, 961 (Okla. 1936). Fraudulent concealment is a question of fact. *Clements v. ONEOK Res. Co.*, 946 P.2d 1154, 1155 (Okla. 1997). The doctrine of equitable estoppel may also operate to estop a defendant from asserting the statute of limitations as a defense "when the defendant's conduct has induced the plaintiff to refrain from timely bringing an action because of the defendant's false, fraudulent or misleading conduct or some act that induces the plaintiff to refrain from timely bringing the action." *Krug v. Helmerich & Payne, Inc.*, 320 P.3d 1012, 1023 (Okla. 2013). Equitable estoppel is also a fact-dependent inquiry. *Id.* (citing *Jarvis v. City of Stillwater*, 732 P.2d 470, 472-73 (Okla. 1987)).

Here, Plaintiff has alleged facts to support tolling under either fraudulent concealment or equitable estoppel. Plaintiff alleges BP fraudulently concealed its failure to pay royalties to Plaintiff and the putative class on Fuel Gas by "falsely reporting the gross volume and price of the gas sold on the monthly royalty check counter-foils BP sends to Plaintiff and the Class." (Doc. No. 2, ¶ 28). Plaintiff alleges "BP used these counter-foils to deceive Plaintiff and the putative Class into believing that BP properly paid all royalties owed and had properly accounted to Plaintiff and the Class for all royalty owed." (*Id.*). However, "these counter-foils failed to account for gas used off the leased premises as Fuel Gas, thereby leaving

Plaintiff and the putative Class with the false impression that BP has paid royalty on and accounted for all of the gas for which BP owes royalty under the oil and gas leases." (*Id.*). Plaintiff further alleges BP "knowingly and intentionally fail[ed] to report to Chieftain and the putative Class the full and correct volume, price and gross value of the gas before deductions for Fuel Gas." (*Id.* ¶ 29). Taken as true, these allegations suffice to raise a question of fact as to whether the applicable statutes of limitations are tolled.

Lastly, the discovery rule may serve to toll the statute of limitations related to Plaintiff's claims other than breach of contract, because Plaintiff alleges facts demonstrating BP deceived Plaintiff and the putative class into believing that BP had paid the royalties owed when in fact, BP had falsely reported the true volume and price of the gas sold on their monthly check stubs. (Doc. No. 2, ¶ 28). Oklahoma courts follow the discovery rule, which "allow[s] limitations in tort cases to be tolled until the injured party knows, or in the exercise of reasonable diligence, should have known of the injury." *Resolution Trust Corp. v. Grant,* 901 P.2d 807, 813 (Okla. 1995) (citations omitted). In its motion, BP argues that the discovery rule does not apply, because Plaintiff failed to exercise "reasonable diligence" to discover BP's unlawful conduct. (*See* Doc. No. 32, at 25). However, Plaintiff asserts the PRSA governs its non-breach of contract claims, and as explained above, the PRSA imposes no duty on the royalty owner to request

information about the correct volume and price of the gas prior to deductions. Moreover, the issue of whether Plaintiff exercised "reasonable diligence" to discover BP's alleged misconduct is a fact-based question not appropriately resolved on a motion to dismiss. Accordingly, BP's request to dismiss on this basis is denied.[2]

## CONCLUSION

For the reasons detailed above, Defendant's Motion to Dismiss (Doc. No. 32) is **GRANTED IN PART AND DENIED IN PART.** Defendant's Motion to dismiss is hereby **GRANTED** as to Count II (tortious breach of contract) and **DENIED** as to Counts III (unjust enrichment), IV (fraud (actual and constructive) and deceit), V (accounting), and VI (injunction). Plaintiff is hereby granted fourteen days to file an Amended Complaint.

**IT IS SO ORDERED** this 2nd day of November, 2017.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[2] Because the Court concludes other tolling principles are adequately pleaded in the Complaint, the Court will not address Plaintiff's brief argument pertaining to maintenance of an "open account" with BP as separate grounds for tolling the statute of limitations.